Filed 1/24/22  Universe v. Harel CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| UNIVERSE, INC., | B303091 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LC107063) |
| v. | |
| ASHER HAREL, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Huey P. Cotton, Jr., Judge.  Affirmed.

Richard P. Towne for Appellant.

Krishel Law Firm and Daniel L. Krishel for Respondent.

———————————————

This appeal presents a rather unspectacular question: Is there a legal difference between the execution of an assignment and its effect on the rights of third parties. The answer is an unsurprising, "Plenty," and that drives the resolution of the appeal.

Plaintiff Universe, Inc. appeals from a judgment in favor of defendant Asher Harel following a bench trial on Universe's complaint for breach of written contract. Universe had brought suit as the assignee of a contract that Harel had entered into with Universe's assignor, Shaoul Amar. The trial court found that, subsequent to the assignment, but prior to Harel receiving notice of the assignment, Amar accepted payment in full satisfaction of Harel's obligations under the contract. Universe now contends the trial court erred, because Harel had conceded the validity of the assignment. That may have been true, but Harel did not concede timely notice of the assignment to him before payment. Nor was there substantial evidence of notice. Accordingly, the assignment was ineffective as to Harel, whose payment to Amar, the assignor, negated Universe's claim. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Underlying Facts

The dispute arose in the course of a real estate transaction. Specifically, the parties had agreed to purchase a distressed property, resell it, and split the profits.

Universe is a corporation owned by Amar's sister. The record does not establish the precise nature of the business relationship among Universe, Amar and his sister, but what is clear is that Amar was acting on behalf of his sister and Universe in the transaction with Harel. Universe and/or Amar identified

2

the property; Harel was the investor who funded the transaction. On June 23, 2014, Harel purchased, for $1,654,744.96, the outstanding loans encumbering the property.[1]

The agreement on which Universe brought suit was signed by Amar and Harel on July 24, 2014. It provides, in its entirety: "Upon close of the sale escrow [of the property] the total proceeds shall be distributed as follows: [¶] The sum of $1,654,744.96 with interest on that sum from 6/23/2014 at the rate of 6% per annum shall be paid to Asher Harel. [¶] If not previously disbursed the sum of $100,000.00 shall be paid to Universe Inc from funds due Asher Harel. [¶] All costs and charges for Seller on the sale of [the property] shall be reimbursed to Asher Harel. [¶] All remaining funds shall be divivided [*sic*] equally between Asher Harel and or assignee and Sh[a]oul Amar and or assignee." The parties refer to this as the partnership agreement.

After Harel purchased the debt, Universe obtained title to the property from its owner, for an amount exceeding $133,000.[2] Harel then paid Universe the $133,000 to purchase the title; Harel took title in the name of an entity he owned. Universe agreed that this payment satisfied Harel's obligation to pay the $100,000 under the partnership agreement.

---

[1] The lenders do not appear to be related to Harel, Amar or Universe.

[2] Harel testified that he was surprised to discover that Universe had actually acquired an interest in the property. He had intended to obtain title from the prior owner by a deed in lieu of foreclosure or foreclosure itself.

In September 2014, Harel foreclosed and obtained title with a full credit bid at the trustee's sale.[3]

Harel then attempted to sell the property, as contemplated by the partnership agreement. He received only one offer. The prospective buyer agreed to a price of $1,850,000, but cancelled the sale after discovering a problem with the foundation of the house. Harel calculated that, if that sale had gone through, after reimbursing himself for his $1,654,744.96 investment, his six percent interest, real estate commission, and costs, there would have been no profit on the sale to split with Amar under the partnership agreement. But there was no sale.

At this point, Harel decided to keep the property and offered to buy Amar out for $36,000; Amar agreed. This agreement was reflected in a November 17, 2014 document, signed by Amar and Harel, stating, "As per our agreement, upon receiving the wire transfer in the amount of $36,000 – I Shaoul Amar will be paid in full for the 50 percent partnership interest in [the property]." Wiring instructions followed.[4] In December 2014, Harel and his wife moved into the house; they were still living there at the time of trial.

At trial, Amar agreed that Harel paid him the $36,000 as he had directed. However, he took the position that the $36,000 was his "referral" or "consulting fee" for "the merger of the deal"

---

[3]     Harel, through an entity, owned the property but he personally held the debt on it. Harel testified that he foreclosed because he wanted clear title.

[4]     Amar handwrote "Mazal Tove" on the bottom, indicating "Good luck."

and did not constitute his share of the profits under the partnership agreement.[5]

In fact, Amar and Universe took the position that the $36,000 payment to Amar in November 2014 could not have bought out Amar's right to 50 percent of the profits because, in June 2014, he had assigned that right to Universe, pursuant to a written assignment.[6] As the trial court found, there was no dispute that Amar had assigned his rights. However, Harel testified at trial that he had not known about the assignment when he paid Amar $36,000 in satisfaction of Amar's partnership share.

## 2. *Pretrial Proceedings*

We limit our discussion of the pretrial proceedings to their relevance to the sole issue on appeal: the assignment and Harel's knowledge of it.

### A. *Operative Complaint*

The operative pleading is Universe's first amended complaint, filed May 16, 2018. Universe alleged that Harel held the trustee's sale without giving notice to Universe, and claimed that the trustee's sale illegally deprived it of its interest in the property and the partnership agreement.[7] It alleged causes of

---

[5] At trial, Amar admitted that neither "referral fee," nor "merging of the deal," is found anywhere on the document.

[6] Although the written assignment agreement, Exhibit C at trial, is the key document on which Universe's appeal hangs, Universe has not made it part of the record on appeal.

[7] Universe's complaint alleged that it was the grantee of the grant deed from the prior owner. Universe omitted the fact that

5

action for breach of the partnership agreement and an accounting.

### B.     *Answer*

Harel answered, alleging a number of affirmative defenses, including, "consent, waiver and/or release" and that Universe lacked standing as it was not the real party in interest.

### C.     *Summary Judgment Denial*

Harel then unsuccessfully moved for summary judgment. The moving and opposing papers, and court's ruling are not part of the record on appeal.  Universe relies on the court's tentative. The record does not indicate that the trial court adopted its tentative, but both parties rely on the tentative on appeal.  In part, the court's tentative ruling states, "There is no dispute that Amar assigned his rights to plaintiff Universe the [day after the partnership agreement]."  The court denied summary judgment, stating the $36,000 paid to Amar was "not relevant since long before the payment Amar assigned his rights to Universe."  The court's tentative did not discuss whether Harel had had notice of the assignment from Amar to Universe.

### D.     *Trial Briefs*

Harel's trial brief discussed the terms of the partnership agreement, including the 50/50 profit split.  As to the assignment, the brief stated, "(As admitted by Amar, he assigned this 'right' to profits to Universe.)".  In the itemization of "Facts/Issues Established in Discovery," Harel wrote, "Shaoul Amar assigned his 'rights' to the 'split of profit' proceeds to Plaintiff Universe." It cited to Amar's deposition testimony for this point.  The brief

---

it had subsequently deeded the property to a Harel entity in exchange for over $133,000.

then argued that the $36,000 payment "was sent at Amar's direction and represented the 'split of profits' portion of the agreement."

Universe's amended trial brief stated that on or about the same date as the partnership agreement, "Amar assigned his rights in the Partnership Agreement to Plaintiff [Universe]. The Assignment Agreement is Plaintiff's Exhibit C. The fact of this Assignment is also not in dispute."[8]

### 3.   *Trial Testimony*

The only witnesses at trial were Amar and Harel. Among other things, Amar testified to the existence of the assignment agreement – Exhibit C. In cross-examination, Harel's counsel suggested the assignment document was created on the eve of trial, and that Amar even had mistakenly dated it June 24, 2014, rather than July 24, 2014 – thereby predating the partnership agreement it was purportedly assigning. Amar disagreed.

Harel testified that, when he paid Amar the $36,000 in satisfaction of the partnership agreement, he had no knowledge of Exhibit C or any assignment of Amar's rights to Universe. He

---

[8]      Upon receiving the amended trial brief, Harel's counsel sent Universe's counsel an email reading, "Your amended trial brief incorrectly states or implies there is a stipulation concerning the Assignment <u>document</u> (plaintiff exhibit C). There is no stipulation as to that specific document; indeed it was never produced until last week – long after the proposed stipulation was requested." In connection with briefing on Universe's subsequent new trial motion, Harel's counsel submitted a declaration stating that the written assignment agreement was not produced in discovery and was only disclosed after the final status conference before trial.

testified that he did not know about the assignment prior to the start of trial. Universe's counsel attempted to impeach Harel. But counsel's tack was to show Harel was aware of the assignment prior to *trial*. Thus, counsel's questioning drew attention to Harel's purported admission of the existence of the assignment in his 2019 motion for summary judgment; his admission of its existence in his September 2019 trial brief, and his supposed awareness of Amar's September 2018 deposition testimony regarding the assignment. Counsel made no effort to show Harel was aware of the assignment prior to his $36,000 buyout of Amar on November 17, 2014. The tone of the cross examination was more consistent with a discovery squabble about whether the assignment document, Exhibit C, had been produced prior to trial, not whether Harel had knowledge of the assignment before the $36,000 payment.[9]

### 4.    *Trial Court's Statement of Decision and Judgment*

The trial court issued its ruling from the bench at the close of trial, stating, "The one good thing is we all agree that there was an assignment. The problem with the assignment, which is fatal to the plaintiff's case, is that there was no notice to the defendant of the assignment prior to the payments that were made on – made to Mr. Amar on November 17, 2014. And as noted in [the] settlement – the $36,000 payment was in settlement of the 50 percent partnership agreement. [¶] As the assignor of the assignment, and as the recipient of the $36,000,

---

[9]    Again, we emphasize that the $36,000 payment was made to Amar in November 2014; all of the litigation conduct on which Universe relies (any admissions in summary judgment, Amar's deposition testimony, and the trial itself) all occurred years later, in 2018 and 2019.

Mr. Amar is charged with having received that money on behalf of Universe. Universe may have a claim against Mr. Amar, but not against Mr. Harel. [¶] Judgment for the defense."

At the court's direction, Harel submitted a proposed statement of decision. Universe submitted objections, stating that the proposed statement of decision "does not address the conflict between the multiple pretrial and trial assertions, stipulations and findings in this action that Plaintiff's Exhibit C – the assignment from Shaoul Amar to [Universe] that is the basis of this action – was known and disclosed to the parties, . . . and is valid and enforceable." Universe again pointed to evidence that Harel had known of the assignment *prior to trial*. It did not argue that Harel had notice of the assignment before he bought out Amar.[10] The court signed the proposed statement of decision. Judgment in Harel's favor was entered on November 14, 2019.

**5.** ***Motion for New Trial***

On December 31, 2019, Universe filed a notice of intent to move for a new trial, on the grounds of accident or surprise and error of law. In Universe's points and authorities, it asserted Harel's testimony that he had not known of the assignment "was false and a surprise because Harel had stipulated on the record multiple times, through his counsel, and the court had determined, in its decision denying Harel's motion for Summary

---

[10] Universe argued, "The issue is simple. Up until the end of trial and the Court's announcement of its proposed decision in Harel's favor, the parties and the Court had agreed to the fact and effect of the assignment. Accordingly, the [proposed statement of decision] must now be corrected or clarified to explain how the Court's posttrial decision that Harel had never heard of the assignment before trial can be reconciled with the facts, evidence and prior findings."

Judgment, that the assignment existed, that he was aware of it, and that it was effective. Universe relied on all of these up to and during trial. Further, but for the elimination of this issue by stipulation, the testimony would have been rebutted . . . ." Universe submitted declarations of two additional witnesses – Amar's sister and an escrow officer – to the effect that they had, in fact, informed Harel of the assignment in July 2014. There was no suggestion that this evidence was newly discovered; counsel simply represented that it had not offered the evidence because it had believed it unnecessary.

Harel opposed the motion for new trial as untimely, in that the notice of intention to move for new trial was filed more than 15 days after the notice of entry of judgment. (Code Civ. Proc., § 659, subd. (a)(2).) On the merits, he argued that there was no stipulation that he had notice of the purported assignment prior to making the buyout payment to Amar.

The court denied the motion as untimely, holding it had no jurisdiction to hear it. Specifically, Universe had relied on a December 16, 2019 notice of entry of judgment in order to argue that its December 31, 2019, notice of intention to move for new trial was timely. But the court stated that a previous notice of entry had been mailed to the parties by the clerk on November 15, 2019, and that the December 16 notice (served "as a courtesy" when Universe's counsel had requested a new one) did not restart the time within which a notice of intent could be filed. The court added that the motion was not well taken, in that Universe provided no evidence "of any stipulation or agreement that Mr. Harel knew about the assignment when he paid Amar or ever. The summary judgment ruling simply observes that there was no dispute that the assignment was

made, not that it was established that Harel was aware of the assignment or had been shown the written assignment."

## *DISCUSSION*

**1.**    *Insufficiency of the Record*

Preliminarily, we address Universe's failure to comply with applicable court rules, as well as its failure to provide an adequate record on appeal.

First, Universe did not include in its appendix the notice of appeal in violation of the rules of court. (Cal. Rules of Court, rules 8.122(b)(1)(A), 8.124(b)(1)(A).) It also failed to include in its appendix the notice of entry of judgment, also required by court rules.[11] (*Id.*, rule 8.122(b)(1)(B).) An appellant's appendix should also include any filings or exhibits necessary for proper consideration of the issues, including "any item that the appellant should reasonably assume the respondent will rely on." (Cal. Rules of Court, rules 8.124(b)(1)(B), 8.122(b)(3).) Yet, as noted above, the appellant's appendix filed by Universe fails to include Exhibit C – the relevant assignment – as well as the briefing on the motion for summary judgment and Harel's opposition to the new trial motion.[12] Despite the inadequacies of

---

[11] This latter omission is particularly significant, because the timeliness of Universe's notice of intent to move for new trial turns on the service date of the notice of entry of judgment.

[12] Universe's entire appellant's appendix was less than 100 pages long and included none of the trial exhibits. Among other absent documents, Universe failed to include the November 17, 2014 agreement, by which Amar agreed to accept $36,000 to be "paid in full for the 50% partnership" on the property. While Harel provided the document in his respondent's appendix, this

11

the record provided by Universe, we exercise our discretion to consider the appeal.  (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1261, fn. 5.)

Nonetheless, it is the appellant's burden to provide an adequate record on appeal, sufficient to demonstrate error. (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1200-1201.)  To the extent the record fails to include the necessary documents, we presume in favor of the judgment.  (*Id.* at p. 1201.)

## 2. *Sufficiency of the Evidence at Trial*

On appeal, Universe argues that the trial court erred by ruling in Harel's favor "based upon [Harel's] assertion for the first time at trial that he had no notice or knowledge of the assignment at the time of the sale, in contradiction to his prior assertions, stipulation and the trial court's findings that the assignment was valid and enforceable."  Universe does not argue for the application of any particular standard of review – not suggesting, for example, that the trial court's ruling was unsupported by substantial evidence.  Universe appears to take the position that the court erred as a matter of law in not concluding Harel was bound by his pretrial representations and arguments that Amar's interest in the partnership agreement had been assigned to Universe.  At bottom, it appears to us that Amar is really arguing that substantial evidence did not support the trial court's finding that Harel did not have notice of the assignment.  We apply the substantial evidence standard of review.  (*Lewis v. Ukran* (2019) 36 Cal.App.5th 886, 891.)

The argument fails for the simple reason that substantial evidence does support the trial court's finding that Harel did not

---

critical exhibit should have been included as part of the record provided by Universe.

12

have notice of the assignment prior to paying Amar the $36,000. An assignee, of course, stands in the shoes of the assignor, taking the assignor's rights and remedies, subject to any defenses the obligor has against the assignor prior to notice of the assignment. (*Casiopea Bovet, LLC v. Chiang* (2017) 12 Cal.App.5th 656, 663.) Here, Harel pursued the defense of release – he had paid Amar $36,000 "in full for the 50% partnership interest in [the property]" prior to receiving notice of the assignment. That Harel might have conceded, for trial and pretrial motions, that Amar had assigned his rights to Universe does not carry with it a concession that he had notice of that assignment when he settled the obligation with Amar.[13]

## 3.     *Universe Does Not Properly Challenge the Denial of New Trial*

The only evidence Universe proffered in the trial court to the effect that Harel knew about the assignment before the $36,000 payment was not at trial but came in the form of the two declarations Universe submitted in connection with its motion for new trial. On appeal from the judgment, an appellant may raise

---

[13]     In any event, Universe's appellate showing is insufficient to demonstrate the concessions it claims. For example, Universe relies on a statement in the court's tentative ruling on the motion for summary judgment, that, "[t]here is no dispute that Amar assigned his rights to plaintiff Universe the next day [after the partnership agreement]." But, (1) this is an excerpt from a tentative ruling, not the court's order; (2) even if it were an order, it indicates only that Harel did not dispute the issue on summary judgment, not that Harel conceded the issue for all purposes; and (3) Harel's moving papers would have indisputably addressed the scope and limits of any such concession, but Universe failed to include those papers in its appellant's appendix.

errors in connection with a ruling on a motion for new trial. (Code of Civ. Proc., § 906.)

The motion for new trial was denied because it was untimely. At the same time the trial court suggested it was substantively deficient as well. Universe acknowledged as much in its opening brief, but only in its reply brief did it argue that the trial court erred in concluding that the motion for new trial was untimely. Points raised for the first time in a reply brief will not be considered. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.) Universe therefore cannot be heard to contest the denial of the new trial motion.

### *DISPOSITION*

The judgment is affirmed. Universe is to pay Harel's costs on appeal.

Having considered Harel's motion for sanctions, Universe's opposition and the arguments made by counsel during oral argument, the court denies the motion for sanctions.

RUBIN, P. J.

WE CONCUR:

BAKER, J.

MOOR, J.

14